```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/28/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                        :
JENNIFER H. PONZINI,                                                    :
                                                                        :
                                        Petitioner,                     :
                                                                        :           20-cv-2522 (LJL)
                        -v-                                             :
                                                                        :           OPINION AND ORDER
COMMISSIONER OF SOCIAL SECURITY                                         :
                                                                        :
                                        Respondent.                     :
                                                                        :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Petitioner Jennifer Ponzini ("Petitioner") moves, pursuant to Federal Rule of Civil
Procedure 12(c), for judgment on the pleadings.  Dkt. No. 21.  The Administrative Law Judge
("ALJ") found that Petitioner was not disabled under the Social Security Administration's
listings and therefore denied Petitioner's claims.  Dkt. No. 12 at 30, 34.  Petitioner submits that
the ALJ committed errors of law in the determination of her residual functional capacity
("RFC").  Dkt. No. 22 at 23.  Petitioner asks that the Court enter an order rescinding the decision
and giving her a new hearing and directing the ALJ to consider the record as a whole.  Dkt. No.
22 at 23.

Respondent, Commissioner of Social Security, Andrew Saul ("Respondent" or
"Commissioner"), cross-moves for judgment on the pleadings, pursuant to Federal Rule of Civil
Procedure 12(c).  Dkt. No. 25.  Respondent argues that the ALJ's decision was based on
substantial evidence and was free of legal error.  Dkt. No. 26 at 7-16.  Respondent asks that the
Court deny Petitioner's motion for judgment on the pleadings, grant Respondent's cross-motion,
and affirm the Commissioner's decision.  *Id.* at 18.

For the following reasons, Petitioner's motion for judgment on the pleadings is denied, and Respondent's motion is granted.

## BACKGROUND

### I.      Nonmedical Background

Jennifer Ponzini ("Petitioner" or "Ponzini") was born in 1984 and was 30 at the alleged onset date ("AOD") of her disability on September 27, 2014.  Dkt. No. 2 at 42.  She attended one year of college and worked primarily as a business manager at a not-for-profit corporation and as an assistant manager/waitress in a restaurant in the relevant period prior to the AOD.  Dkt. No. 12 at 295.  She lives with her husband and daughter in a single-family home.  *Id.* at 43.  Petitioner's husband is the child's main caregiver, does the housekeeping, and prepares meals.  *Id.* at 313-14.

Petitioner's earnings were steady and grew throughout the period before the AOD.  *Id.* at 161.  In 2014, her earnings were $78.575.12.  *Id.*  In 2015, after the AOD, her earnings declined to $4,048.32, and in 2016, her earnings were $21,033.57.  *Id.*; *see also id.* at 29.

Petitioner alleges that she became disabled in September 2014, primarily due to lumbar impairments and lower back pain that worsened after she experienced a fall and gave birth.  Dkt. No. 2 at 56.  ALJ Katherine Edgell found that "[f]rom September 27, 2014 through April 30, 2016, [Petitioner] did not engage in substantial gainful activity."  Dkt. No. 12 at 28.

Petitioner attempted to return to her job in May 2016, *id.* at 326, but had to cut back from working full-time to working part-time on a consulting basis from August to October 2016.  *Id.* at 4-5 (citing Dkt. No. 12 at 326, 46-54).  The ALJ found that "since May 2016 and continuing through the date of this decision, the claimant is engaging in substantial gainful activity."  *Id.* (citing 20 C.F.R. §§ 404.1520(b); 404.1571 *et seq.*).

2

## II.   Medical Background

Petitioner has a history of back impairments, including cauda equina syndrome.  Dkt. No.

2 at 8.  Her pain worsened after she slipped and fell on ice in February 2014.  *Id.* at 4.

Petitioner gave birth to her child on September 27, 2014.  Dkt. No. 12-1 at 80-85.  She

alleges that she became disabled on that date.  *Id.*  On October 1, 2014, she was seen by Dr.

Peretz of Somers Orthopedic who determined she needed an MRI due to cervical complaints

beginning with the delivery.  *Id.* at 45-46.  A physical examination showed "diffuse tenderness

over the trapezial region [and a] severely stiff range of motion of the cervical spine."  *Id.* at 45.

Dr. Peretz ordered an MRI performed the next day.  The MRI showed mild degenerative disc

disease and foraminal stenosis.  *Id.* at 45-47.

On January 26, 2015, Petitioner received treatment for neck and lower back pain from

Dr. Amit Dholakia at Mt. Kisco Medical Group.  *Id.* at 90-92.  Dr. Dholakia's exam was positive

for lumbar tenderness.  *Id.*  He diagnosed Petitioner with lumbar or thoracic radiculopathy and

scheduled a caudal epidural steroid injection (ESI).  *Id.*  He also determined that Petitioner's

symptoms were consistent with a C4-5 facet syndrome and suggested a facet injection.  *Id.* at 93.

The ESI was performed on February 25, 2015, but Petitioner noted on a return visit on March 13,

2015 that it provided no relief.  *Id.* at 67.

Petitioner visited Dr. David Shein ("Shein") on March 4, 2015 and complained of

continuing pain since the surgery.  *Id.* at 291.  Shein suggested hardware site injections, that Dr.

Jacob Handszer performed on April 22, 2015.  *Id*. at 292-94.  These injections also did not

relieve Petitioner's pain.  *Id*. at 296.

On June 17, 2015, Petitioner underwent an S-I joint injection that relieved her pain for a

few hours.  *Id.* at 78-79.  Dr. Handszer injected the S-I joint a second time on July 27, 2015,

again providing Petitioner with temporary pain relief, and diagnosed her with sacroiliitis.  *Id.* at

76-77.  She received several other procedures and medical assessments leading up to her ALJ

hearing.  *Id.* at 297-316.

> Consistent with this history, the ALJ found that:

> For the period of September 27, 2014 through April 30, 2016, the claimant had the
> following severe impairments: history of 2010 cauda equin[a] syndrome with spinal
> fusion, status post pedicle screw injections in 2015, and mild chronic S1
> radiculopathy by 2016 EMG.

Dkt. No. 12 at 29.  The ALJ also found that Petitioner "experienced an increase in back pain and

underwent surgery in 2015."  *Id.* at 30.  Finally, the ALJ summarized:

> The record documents a history of spinal fusion surgery in 2010 with good results.
> In 2014, [Petitioner] had some "cervical spasm status post C-section and
> pregnancy."  An MRI of the cervical spine on October 10, 2014 showed mild
> degenerative disc disease, mild left C2-3 stenosis and small focal syrinx at C7-T1.
> (Exhibit 1F, pages 7-9).  She received about 5 weeks of physical therapy.  (Exhibit
> 2F).  In 2015, she had some back pain but examination findings revealed full muscle
> strength in the upper and lower extremities except right distal lower extremity was
> 4-4+ out of 5.  (Exhibit 6F, page 6).  On February 24, 2015, the claimant was
> administered a caudal epidural steroid injection with fluoroscopic guidance.
> (Exhibit 3F, page 6).  On March 18, 2015, Dr. David Shein advised that the claimant
> had a previous fusion surgery years ago and "recovered completely from this, but
> still has axial pain."  He advised that the claimant is 100% disabled and unfit for
> work.  He advised that the claimant is unable to sit for more than 5 to 10 minutes
> before the need to get up and walk around.  (Exhibit 12F, page 15).  On April 17,
> 2015, she received bilateral L4 and L5 pedicle screw hardware injections.  (Exhibit
> 7F, page 7).  An EMG on June 27, 2016 indicated mild chronic right S1
> radiculopathy without evidence of active denervation.  (Exhibit 9F, page 4).

*Id.* at 31.

### III.   Medical Opinions at Issue

Throughout her medical history, Petitioner was treated by various physicians, who

provided opinions on her condition.

#### A.   Dr. Shein's Opinion

The record before the ALJ contains a form filled out by Dr. Shein, Petitioner's treating

physician, on May 23, 2018, diagnosing Petitioner with spinal enthesopathy, lumbosacral region

cervicalgia.  Dkt. No. 12-1 at 351.  On its face, the form indicates that its purpose is "[t]o

determine this individual's ability to do work-related activities on a day-to-day basis in a regular

work setting," and provided different boxes for the physician to check ranging from the most

severe impairments to the least severe.  *Id.*  Dr. Shein consistently and invariably checked the

boxes for the most severe impairments: lifting and carrying were affected by the impairment and

Petitioner could never lift 0-5 pounds, 5-10 pounds, 10-20 pounds, or 20-50 pounds (the medical

findings supporting the assessment of postlaminectomy syndrome); standing/walking affected by

the impairment with the individual unable to work more than 15 minutes without interruption;

and sitting affected by the impairment with the individual unable to sit more than 15 minutes

without interruption.  Dr. Shein was asked to check one of four boxes for seven different postural

activities: climb, bend, balance, stoop, crouch, kneel, and crawl.  The options were Never,

Occasionally (up to 1/3 of the time), Frequently (between 1/3 and 2/3 of the time), and

Constantly (2/3 or more of the time).  He checked "Never" for every one of the seven postural

activities.  His medical/clinical findings supporting the assessment were: "Due to 2 surgeries in

her lumbar spine, she has severe chronic intractable pain."  *Id.* at 352.  Dr. Shein also was asked

to check one of the same four boxes for three different manipulative activities: Reach (including

overhead), Feel/Handle, and Push/Pull.  He checked the "Never" box for all three.  *Id.*  The

medical clinical findings were: "Unable to lift, push, pull, car [sic]."  *Id.*  Dr. Shein listed the

following environmental limitations he believed Petitioner experienced due to her impairments:

"Chemicals, Moving Machinery, Humidity, Noise, and Vibration."  *Id.*  He concluded that

"Patient is 100% Disable [sic]" and that those limitations had been present since November 2,

2010.  *Id.*

The record contains progress reports from Dr. Shein from March 4, 2015 to September

16, 2016.  *Id.* at 278.  The records reflect medications Petitioner was prescribed including

Percocet, Robaxin, and Valium and that she received a CT and MRI of her cervical spine.  *Id.* at

279.  It also contains reports from March 4, 2015 and March 18, 2015, May 4, 2015, July 15,

2015 and August 2015.  *Id*. at 280-90.

The record also includes an April 2016 report by Dr. Shein recommended that Ponzini

"go ahead with full activity in her range of comfort and if she can manage a full day's work this

is up to her to do, but I am going to try to get her back to work as of May 1 full time."  *Id*. at 311.

His May 2016 report indicated that Ponzini was suffering from "persistent nerve root irritation

involving the sciatic nerve."  *Id*. at 312.  Shein noted that he had "urg[ed] her to quiet down all

activities until we see exactly what is going on here."  *Id*. at 313.  In his September 2016 report,

Shein noted that "[t]his is a difficult problem" and that Ponzini was suffering from "lumbar disk

prolapse with posterior lumber interbody fusion" along with "sacroiliitis."  *Id*. at 315.  The report

indicated that Ponzini "want[ed] to work but" could not.  *Id*.  The report indicated that Ponzini

was becoming impoverished because of her pain and had "cut her work hours down to 6 hours a

week."  *Id*.

**B.     Dr. Zaman's Opinion**

The record includes the report of Dr. Mohammed Zaman, a consultative physician who

performed an examination on Ponzini on July 14, 2016.  Dkt. No. 12 at 114-15.  Dr. Zaman

reported that Ponzini:

> is unable to cook, clean, or do laundry because of too much pain, which is done by
> her husband.  She shops once a week with assistance.  She does childcare twice a
> week.  She cannot take care of her daughter every day.  She showers, bathes, and
> dresses independently as needed daily and sometimes needs help with shoes and
> socks.  She watches TV and listens to the radio.

*Id*. at 115.  Zaman reported that Ponzini "appeared to be in no acute distress," but that she was

"unable to walk on heels and toes with difficulty or squat"; that she "[n]eeded no help changing

6

for exam or getting on and off exam table," and that she was "[a]ble to rise from chair without difficulty." *Id*. Zaman found that Ponzini had a full range of motion in her cervical spine, shoulders, elbows, forearms, wrists, hips, knees and ankles. *Id*. at 116. Zaman rated Ponzini "[s]trength 5/5 in bilateral upper extremity and left lower extremity and 4/5 in the right lower extremity." *Id*. at 116-17. Zaman concluded that "[b]ased on the examination done today, the claimant has moderate limitation in prolonged walking, heavy lifting, pulling, and pushing." *Id*. at 117.

### C.    Dr. Litchmore's Opinion

The record includes another consultative internal medicine examination from Dr. Trevor Litchmore, dated April 19, 2018. Dr. Litchmore recorded that Ponzini reported that she suffered from "sharp, constant [pain] in the lower back, radiating to the legs on a scale of 7/10, reduced with rest and increased with movement." *Id*. at 274. Dr. Litchmore wrote that:

> She does laundry and childcare. She showers, bathes, and dresses herself. . . . She currently works part time six to ten hours per week, two days per week, doing accounting work. She watches TV and listens to the radio.

*Id*. Dr. Litchmore further observed that Ponzini "appeared to be in no acute distress." *Id*. at 275. Her gait was normal, she could "walk on heels and toes without difficulty" and "[s]quat 1/3 due to back pain." *Id*. She "[n]eeded no help changing for exam, but had difficulty getting on and off exam table because of back pain." *Id*. She was "[a]ble to rise from chair without difficulty." *Id*. Dr. Litchmore also reported that Ponzini had full range of motion in most joints, but noted that "[l]umbar spine shows flexion and extension limited to 60 degrees." *Id*. Litchmore rated Ponzini's strength at "5/5 in the upper and lower extremities." *Id*. at 276. He concluded that: "[o]n the basis of the physical exam, the claimant will have limitations as it relates to lifting and carrying heavy objects, stooping, bending, squatting, crawling, climbing, unprotected heights, all within the context of her chronic back pain." *Id*.

**IV.     The ALJ's Decision**

On April 5, 2016, Petitioner applied for Social Security Disability Insurance benefits

under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, for a disability allegedly

beginning on September 27, 2014.  Dkt. No 12 at 26.  On July 20, 2016, the Social Security

Administration ("SSA") denied Petitioner's application, and she responded timely by requesting

a hearing before an ALJ.  *Id.*  ALJ Katherine Edgell held a video hearing on May 24, 2018.  *Id.*

at 26, 34.  Ponzini and her counsel appeared, along with Michael Smith, an impartial vocational

expert.  *Id*. at 26.

In an opinion dated September 14, 2018, after considering all the evidence, ALJ Edgell

concluded that Ponzini had not been under a disability from her AOD through the date of the

decision.  *Id*. at 27.  The ALJ concluded that Ponzini had not engaged in substantial gainful

activity from September 27, 2014 through April 30, 2016.  *Id*.  However, the ALJ determined

that, since May 2016 and continuing through the date of the decision, Ponzini had been engaging

in substantial gainful activity.  She found that Petitioner had returned to full time work in May

2016, but had reduced her hours to part time consulting work in October 2016.  Since October

2016, Petitioner had run her own business from her home, earning substantial net income for

herself and her "partner" husband.  *Id*.  The ALJ further determined that Ponzini had suffered

from the severe impairments of cauda equina syndrome with spinal fusion and mild chronic S1

radiculopathy in the period from September 27, 2014 to April 30, 2016.  *Id*.  She observed that

these "impairments significantly limit the ability to perform basis work activities."  *Id*.  She

noted: "No treating, examining, or non-examining medical source has mentioned findings or

rendered an opinion that the claimant's impairments, singly or in combination, medically equaled

the criteria of any listed impairment."  *Id.* at 29.  The ALJ concluded that the impairments

Ponzini suffered from did not meet the severity of the listed requirements in 20 CFR Part 404,

Subpart P, Appendix 1, and that accordingly Ponzini was not per se disabled.  *Id*.

Because Ponzini was not per se disabled, the ALJ analyzed whether or not the record

showed that Ponzini had the residual functional capacity ("RFC") to perform the requirements of

her past relevant work.  The ALJ concluded that she did, "except the claimant needed a sit/stand

option at will as long as doing so does not take the claimant off task more than 5% of the

workday, and could occasionally stoop, squat, bend, climb, crawl and be exposed to heights."  *Id*.

at 30.  Specifically, the ALJ found that the evidence of Petitioner's medically determinable

impairments could reasonably be expected to cause her alleged symptoms of back pain.  *Id*.

However, the ALJ also found that Petitioner's "statements concerning the intensity, persistence

and limiting effects of these symptoms are . . . inconsistent with the objective evidence in the

record."  *Id.*  In making this finding, the ALJ afforded "significant evidentiary weight" to the

opinions of Drs. Zaman and Litchmore.  *Id*. at 32.  The ALJ ascribed only "slight evidentiary

weight" to the opinions of Dr. Shein, because the "extreme limitations [set forth in Dr. Shein's

assessment were] not supported by any specific rationale and [were] contradicted by the

claimant's ability to work full time through fiscal year 2014 and part-time work thereafter," *id*. at

32, and because the "limits [were] also inconsistent with the claimant's ability to provide part

time child care," *id.*  The ALJ also concluded that Ponzini's allegations of the "nature, intensity,

persistence, limiting effects of those symptoms [were] not consistent with the medical signs,

laboratory findings and/or other evidence of record which limit the capacity for work-related

activities."  *Id*. at 33.  In particular, the ALJ cited the facts that Ponzini "was able to drive, take

care of her own personal care tasks, provide childcare for an infant and shop," and that she had

returned to work in October 2016 as inconsistent with Ponzini's claim that she was completely

disabled.  *Id.*  Further, the ALJ found that Ponzini's claims were inconsistent with her treatment history and the opinions of the consulting physicians.  *Id*.  The ALJ additionally observed that, although "the record does contain opinions from treating or examining physicians indicating that the claimant is currently disabled . . . those opinions are inconsistent with the claimant's admitted activities of daily living, work activity, and inconsistent with the unremarkable clinical record."  *Id*.

The ALJ concluded that Ponzini "is capable of performing past relevant work as a bookkeeper, administrative assistant and department manager."  *Id*. at 34.

## PROCEDURAL HISTORY

Petitioner appealed the ALJ's decision to the SSA Appeals Council.  Dkt. No. 12 at 13. The Appeals Council denied Petitioner's request for review on June 4, 2019.  *Id*. at 17.

Petitioner filed suit in the Southern District of New York on March 20, 2020, seeking judicial review of a final decision of the SSA Commissioner.  Dkt. No. 2.  On October 31, 2020, Petitioner moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. No. 21.  On February 2, 2021, Respondent submitted a cross-motion for judgment on the pleadings pursuant to Rule 12(c).  Dkt. No. 25.  On February 8, 2021, Petitioner submitted a Reply Memorandum to Respondent's cross-motion.  Dkt. No. 27.

## LEGAL STANDARD

A judgment on the pleadings under Rule 12(c) is appropriate where "the movant establishes that no material issue of fact remains to be resolved" such that a judgment on the merits can be made "merely by considering the contents of the pleadings."  *Guzman v. Astrue*, 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (citing *Juster Assocs. v. City of Rutland*, 901 F.2d 366, 369 (2d Cir. 1990)).  The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (made applicable through 42 U.S.C. § 1383(c)(3)). Put another way, the Court has discretion to determine whether or not a remand is appropriate in evaluating the ALJ's decision. *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) (quoting § 405(g)); *see Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). The Court may overturn the ALJ's decision where it is based on legal error or is not supported by substantial evidence in the record. Substantial evidence is "more than a mere scintilla"—it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted); *see Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (citing *Perales*, 402 U.S. at 401); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (same). Though this standard is deferential to an ALJ's finding, an ALJ's disability determination must be reversed or remanded if it is not supported by substantial evidence or if it contains legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

Petitioner argues that the case should be remanded to the ALJ for two reasons: First, Petitioner argues that the ALJ's decision was legally erroneous for failure to observe the "treating physician rule." Second, Petitioner argues that the ALJ's disability determination was not supported by substantial evidence. The Court addresses each of these arguments in turn.

## I.    Legal Error

Petitioner argues that the Commissioner committed legal error by failing to accord the proper weight to the opinion from Ponzini's treating physician, Dr. Schein. The Second Circuit has stated that:

> The SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant.  Thus, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (alterations in original) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); 20 C.F.R. § 404.1527(c)(2)).  There are circumstances when it is appropriate for an ALJ "not to give controlling weight to a treating physician's opinion."  *Id.* (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam).  "[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."

When a treating physician's opinion is not given controlling weight, "SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive."  *Greek*, 802 F.3d at 375 (citing 20 C.F.R. § 404.1527(c)(2)(i), (2)(ii), (3)-(6)).  To override the treating physician's opinion, the ALJ must consider "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist."  *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).  After considering these factors, the ALJ must "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion."  *Burgess*, 537 F.3d at 129 (quoting *Halloran*, 362 F.3d at 33); *see also Greek*, 802 F.3d at 375 (reaffirming these holdings).  Indeed, "failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."  *Id.* (citing *Burgess*, 537 F.3d at 129-30; *Snell*, 177 F.3d at 133).

The Circuit has also held that:

> An ALJ's failure to "explicitly" apply the *Burgess* factors when assigning weight
> at step two is a procedural error. If "the Commissioner has not [otherwise] provided
> 'good reasons' [for its weight assignment]," we are unable to conclude that the error
> was harmless and consequently remand for the ALJ to "comprehensively set forth
> [its] reasons." If, however, "a searching review of the record" assures us "that the
> substance of the treating physician rule was not traversed," we will affirm.

*Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (citing *Selian*, 708 F.3d at 419-20; *Halloran*,

362 F.3d at 32-33).

The ALJ need not recite each *Burgess* factor explicitly if the decision reflects application

of the substance of the treating physician rule. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407

(2d Cir. 2011) ("When an ALJ refuses to give controlling weight to the medical opinion of a

treating physician, he/she must consider various 'factors' in deciding how much weight to give

the opinion. . . . The Commissioner must also give 'good reasons' for the weight given to the

treating source's opinion. Nevertheless, where 'the evidence of record permits us to glean the

rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony

presented to him or have explained why he considered particular evidence unpersuasive or

insufficient to lead him to a conclusion of disability.") (citing 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2); *Halloran*, 362 F.3d at 32; *Schaal v. Apfel*, 134 F.3d 496, 503-04 (1998));

*Mongeur v. Heckler*, 722 F.2d 1033, 1040 (1983); *Halloran*, 362 F.3d at 32; *Berry v. Schweiker*,

675 F.2d, 464, 469 (1982)); *Galente v. Acting Comm'r of Soc. Sec.*, 2018 WL 852113, at *16

(S.D.N.Y. 2018) (allowing the treating physician's testimony to be given less weight without a

specific recital of the *Burgess* factors where a treating physician's opinions were inconsistent

with his own previous opinions "without an evidentiary basis for the variance," and "conflicted

with other medical evidence in the record." After "carefully considering the entire record and

the ALJ's opinion," the Court concluded that the ALJ "applied the substance of the treating

physician rule and provided good reasons for affording less weight to [the treating physician's]

13

opinion.").

Here, the ALJ did not explicitly consider the *Burgess* factors in according Shein's

opinions "slight evidentiary weight." Dkt. No. 12 at 32-33. Instead, she wrote:

> There is a treating medical source assessment from David Shein, a treating orthopedist dated May 23, 2018. He opined that the claimant could never even lift and carry 0-5 pounds. He also opined that the claimant could stand and walk 0 hours and sit 0 hours during an 8-hour workday. He opined that the claimant could never climb, bend, balance, stoop, crouch, kneel and crawl, reach, fell, hand, push and pull. However, these extreme limitations are not supported by any specific rationale and are contradicted by the claimant's ability to work full time through fiscal year 2014 and part-time work thereafter. These limits are also inconsistent with the claimant's ability to provide part-time childcare. Moreover, the clinical record and the claimant's activities of daily living poorly support his earlier opinion in 2015 that the claimant was 100% disabled, unfit for work, and unable to sit for more than 5 to 10 minutes before the need to get up and walk around. For these reasons, Dr. Shein's opinions are given slight evidentiary weight.

*Id*.

Although the ALJ did not discuss the *Burgess* factors one by one, she did discuss the

substance of all four of them. With respect to the first *Burgess* factor, although the ALJ did not

spell out the "frequency, length, nature, and extent of treatment," she mentions that Shein was

the treating orthopedist, and elsewhere in her opinion she discusses Shein's March 18, 2015

report that Ponzini was completely disabled as a result of axial back pain. The ALJ discussed the

second and third *Burgess* factors in detail. With respect to the fourth *Burgess* factor, the ALJ

mentioned that Dr. Shein is an orthopedist. Thus, though she did not explicitly identify the

factors, the ALJ referenced all four factors required by *Burgess*, and provided a detailed

discussion of the factors that were important to her decision not to accord controlling weight to

Dr. Shein's assessment.

The ALJ's decision not to accord Dr. Shein's opinion controlling weight was supported

by good reasons. She discusses the fact that the conclusions Dr. Shein arrived at were

inconsistent with the remainder of the medical record before the court, and the fact that Dr.

Shein's opinion was not supported by any particular rationale.  Instead, Dr. Shein appears to

have checked the boxes indicating that the claimant was fully and completely disabled without

providing any explanation of how he arrived at that conclusion.  As the ALJ explained, these

restrictions were inconsistent with Ponzini's ability to work part-time and to provide care for her

child.  The claim that Ponzini was unable to sit for more than 5 to 10 minutes was contradicted

by the clinical record and by Ponzini's daily activities.  Dkt. No. 12 at 28.  These were

sufficiently "good reasons" to give slight evidentiary weight to Dr. Shein's opinions.  *See Rusin*

*v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) ("The ALJ did not err in declining to afford

[the treating physician's] opinion controlling weight because his opinion is inconsistent with his

treatment notes and diagnostic observations, the other medical opinion evidence, and [plaintiff's]

reported activities of daily living.").  Furthermore, Dr. Shein's conclusions were inconsistent

with the opinions of the consultative examiners.  *See Arzuage v. Colvin*, 2014 WL 7180438, at

*6 (S.D.N.Y. Dec. 11, 2014) ("[T]he treating physician rule permits an ALJ to give greater

weight to consultative examiners or non-examining physicians as long as their opinions are

supported by substantial evidence.").

## II.    Substantial Evidence

Petitioner argues that the ALJ's determination that she had the RFC to perform a limited

range of sedentary work was not supported by substantial evidence.  "[W]hatever the meaning of

'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "means—and means

only—such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Id.*  "The substantial evidence standard means once an ALJ finds facts, we can

reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Brault*, 683

15

F.3d at 448.  It is "a very deferential standard of review—even more so than the clearly erroneous standard."  *Id.*

There was substantial evidence supporting the ALJ's determination.  The ALJ acknowledged that Petitioner suffered from back pain and that her ability to perform basic work activities was substantially limited.  Dkt. No. 12 at 25.  The ALJ concluded that Petitioner could perform sedentary work "except the claimant needed a sit/stand option at will as long as doing so does not take the claimant off task more than 5% of the workday, and could occasionally stoop, squat, bent, climb, crawl and be exposed to heights."  *Id*. at 26.

This determination of Petitioner's RFC was supported by the record.  The medical evidence supported the finding that Plaintiff's back pain limited her to sedentary work, but did not incapacitate her from working completely.  As the ALJ found, a cervical MRI had shown only "mild degenerative disc disease, mild left C2-C3 stenosis and small focal syrinx at C7-T1." Dkt. No. 12 at 27.  A 2015 examination showed that she had "full muscle strength in the upper and lower extremities except right distal lower extremity."  *Id*.  A June 27, 2016 EMG "indicated mild chronic right S1 radiculopathy without evidence of active denervation."  *Id*.  During Dr. Zaman's consultative examination, "the claimant reported shopping once a week with assistance, doing childcare twice weekly, showering/dressing and bathing independently, watching television and listening to the radio."  *Id*.  She was able to walk without "acute distress" and without assistive devices.  *Id*.  She did not need help changing for the examination or getting on or off a table, and she was able to rise from a chair without difficulty.  *Id*.  By March and October 2017, she had a musculoskeletal exam rating of "Normal" with full range of motion in the upper and lower extremities.  *Id*.  And "[d]uring an annual physical examination on October 20, 2017, she had no new complaints and reported doing stretch and strengthening exercises to

16

keep her back from hurting." *Id*. at 28.  All of this evidence supported the ALJ's finding that

Petitioner was capable of doing sedentary work during the entire period beginning from her

AOD.

Furthermore, the evidence of the consultative examiners supported the ALJ's finding.

Dr. Zaman diagnosed "cauda Aquino [sic] syndrome and lower back pain." *Id*.  However, he

"listed a stable prognosis and moderate limitation in prolonged walking, heavy lifting, pulling

and pushing." *Id*.  During her consultation with Dr. Litchmore, Petitioner indicated that she

worked part-time and performed laundry and childcare. *Id*.  A musculoskeletal exam revealed no

deficits except for lumbar spine flexion and extension limited to sixty degrees. *Id*.  Dr.

Litchmore diagnosed low back pain, but did not find any neurological deficits and found full

muscle strength in the upper and lower extremities. *Id*.  The reports of the consultative

examiners on the record support the conclusions at which the ALJ arrived.

Petitioner argues that the ALJ's RFC determination was incorrect as a matter of law

because it failed to evaluate Ponzini's limitations resulting from general pain and the S-I joint

fusion in particular.  But this is inaccurate.  The ALJ examined Petitioner's medical history and

the etiology of her pain in detail.  The ALJ determined that Petitioner's pain did cause substantial

limitations in the work she could perform.  However, on the basis of a detailed review of the

record, including Petitioner's medical history, the reports of her consultative physicians, and the

evidence about the activities Petitioner performed on a day to day basis, the ALJ concluded that

Petitioner still had some limited RFC and was accordingly not fully disabled.  The Court cannot

reweigh the evidence on substantial evidence review. *Brault v. Soc. Sec. Administration*, 683

F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts,

we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'")

(quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

Petitioner argues that there is no evidence on the record that supports a finding that

Petitioner had the RFC to perform a job that had a sit/stand option that would not take Ponzini

off task for more than 5% of the workday.  Dkt. No. 22 at 17.  Petitioner argues that none of the

consulting sources speak to such a limitation, and that Ponzini's testimony and written

statements do not support the conclusion.  But Petitioner ignores the evidence that the ALJ

explicitly relied upon in making this determination.  The ALJ looked to record evidence showing

that Petitioner's injury was stable, Dkt. No. 12 at 27, that she engaged in a wide range of daily

activities, *id.*, that she independently bathed, dressed, shopped, and cared for her child, *id.*, that

she had full range of motion in most of her joints, *id.* at 28, that she had full muscular

development in her upper and lower body, *id.*, and, that she worked part-time as an accountant,

*id.*  This evidence was sufficient for the ALJ to determine that Ponzini was not completely

disabled and that she maintained some capacity for work.  The ALJ was not required to make a

finding that Petitioner had no RFC merely because neither of the consulting sources on which

she relied stated a legal conclusion about Petitioner's RFC on the record.  *See Frazier v. Comm'r*

*of Soc. Sec.*, 2017 WL 1422465, at *13 n.26 (S.D.N.Y. Apr. 20, 2017) ("[Plaintiff's] assertion

that 'no source indicated an opinion that [she] could be on her feet for two-third's or more of an

eight hour workday' is at least implied contradicted by [consultative examiner's] assessment that

[plaintiff] had a mild restriction for prolonged sitting'; he listed no restriction on prolonged

standing"); *Heitz v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 413, 425 (S.D.N.Y. 2016) ("Although

[physician] did not make specific conclusions regarding the extent of [plaintiff's] lifting or

carrying limitations, his examination and findings as a whole imply that only minimal such

limitations exist.").

## CONCLUSION

For the foregoing reasons, Petitioner's motion for judgment on the pleadings is DENIED

and Respondent's cross-motion for judgment on the pleadings is GRANTED.  The Clerk of

Court is respectfully directed to close Dkt. Nos. 21 and 25.


        SO ORDERED.


Dated: September 28, 2021
       New York, New York                          LEWIS J. LIMAN
                                            United States District Judge